## UNITED STATES DISTRICT COURT
## DISTRICT OF MAINE

| | | |
|---|---|---|
| RAYMOND L. LAFFELY, | ) | |
| | ) | |
|     *Plaintiff* | ) | |
| | ) | |
| v. | ) | Docket No. 04-273-P-C |
| | ) | |
| JO ANNE B. BARNHART, | ) | |
| *Commissioner of Social Security,* | ) | |
| | ) | |
|     *Defendant* | ) | |

### *REPORT AND RECOMMENDED DECISION*[1]

This Social Security Disability ("SSD") appeal raises the question whether substantial evidence supports the commissioner's determination that the plaintiff, who alleges that he is disabled by carpal tunnel syndrome, overuse tendonitis, shoulder dislocation, posttraumatic arthritis and hepatitis C, is capable of returning to past relevant work or, alternatively, performing work existing in significant numbers in the national economy. I recommend that the decision of the commissioner be affirmed.

In accordance with the commissioner's sequential evaluation process, 20 C.F.R. § 404.1520, *Goodermote v. Secretary of Health & Human Servs.*, 690 F.2d 5, 6 (1st Cir. 1982), the administrative law judge found, in relevant part, that the plaintiff had residuals of bilateral carpal-tunnel-syndrome

---

[1] This action is properly brought under 42 U.S.C. § 405(g). The commissioner has admitted that the plaintiff has exhausted his administrative remedies. The case is presented as a request for judicial review by this court pursuant to Local Rule 16.3(a)(2)(A), which requires the plaintiff to file an itemized statement of the specific errors upon which he seeks reversal of the commissioner's decision and to complete and file a fact sheet available at the Clerk's Office. Oral argument was held before me on August 5, 2005, pursuant to Local Rule 16.3(a)(2)(C) requiring the parties to set forth at oral argument their respective positions with citations to relevant statutes, regulations, case authority and page references to the administrative record.

release surgery and hepatitis C, impairments that were severe but did not meet or equal any listed in Appendix 1 to Subpart P, 20 C.F.R. § 404 (the "Listings"), Findings 3-4, Record at 22-23; that his allegations regarding his limitations were not totally credible for reasons set forth in the body of the decision, Finding 5, *id.* at 23; that he retained the residual functional capacity ("RFC") to lift and carry twenty pounds occasionally and ten pounds frequently and to sit, stand or walk each for a total of six hours per day, with unlimited use of hand and foot controls, no climbing of ladders, ropes and scaffolds, occasional use of ramps and stairs, no overhead reaching and limited range of motion using the left arm, and no concentrated exposure to extreme cold or vibration, Finding 6, *id.*; that he was able to perform past relevant work as a real-estate agent, Finding 7, *id.*; that although his exertional limitations did not allow him to perform the full range of light work, using Rule 202.15 of Table 2, Appendix 2 to Subpart P, 20 C.F.R. § 404 (the "Grid") as a framework for decision-making, there were a significant number of jobs in the national economy he could perform, including work as an usher, lobby attendant, recreation aide and counter clerk, Finding 12, *id.*; and that he therefore was not under a disability at any time through the date of decision, Finding 13, *id.*[2] The Appeals Council declined to review the decision, *id.* at 5-7, making it the final determination of the commissioner, 20 C.F.R. § 404.981; *Dupuis v. Secretary of Health & Human Servs.*, 869 F.2d 622, 623 (1st Cir. 1989).

      The standard of review of the commissioner's decision is whether the determination made is supported by substantial evidence. 42 U.S.C. § 405(g); *Manso-Pizarro v. Secretary of Health & Human Servs.*, 76 F.3d 15, 16 (1st Cir. 1996). In other words, the determination must be supported by such relevant evidence as a reasonable mind might accept as adequate to support the conclusion drawn. *Richardson v. Perales,* 402 U.S. 389, 401 (1971); *Rodriguez v. Secretary of Health &*

---

[2] The plaintiff had acquired sufficient quarters of coverage to remain insured for purposes of SSD through the date of decision. *See* *(continued on next page)*

*Human Servs.*, 647 F.2d 218, 222 (1st Cir. 1981).

The administrative law judge reached Step 4 of the sequential process but went on to make an alternative finding at Step 5. At Step 4, the claimant bears the burden of proof of inability to return to past relevant work. 20 C.F.R. § 404.1520(e); *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987). At this step the commissioner must make findings of the plaintiff's RFC and the physical and mental demands of past work and determine whether the plaintiff's RFC would permit performance of that work. 20 C.F.R. § 404.1520(e); Social Security Ruling 82-62, reprinted in *West's Social Security Reporting Service* Rulings 1975-1982 ("SSR 82-62"), at 813.

At Step 5 the burden of proof shifts to the commissioner to show that a claimant can perform work other than his past relevant work. 20 C.F.R. § 404.1520(f); *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); *Goodermote*, 690 F.2d at 7. The record must contain positive evidence in support of the commissioner's findings regarding the plaintiff's RFC to perform such other work. *Rosado v. Secretary of Health & Human Servs.*, 807 F.2d 292, 294 (1st Cir. 1986).

The plaintiff's arguments also implicate Step 2 of the sequential process. Although a claimant bears the burden of proof at this step, it is a *de minimis* burden, designed to do no more than screen out groundless claims. *McDonald v. Secretary of Health & Human Servs.*, 795 F.2d 1118, 1123 (1st Cir. 1986). When a claimant produces evidence of an impairment, the commissioner may make a determination of non-disability at Step 2 only when the medical evidence "establishes only a slight abnormality or combination of slight abnormalities which would have no more than a minimal effect on an individual's ability to work even if the individual's age, education, or work experience were specifically considered." *Id.* at 1124 (quoting Social Security Ruling 85-28).

---
Finding 1, Record at 22.

The plaintiff identifies a host of errors, contending that, for purposes of Step 4, the administrative law judge erred in deeming work that did not constitute substantial gainful activity past relevant work and, for purposes of Step 5, he conducted a flawed credibility analysis and failed to (i) evaluate pain adequately, (ii) consider a Veterans Administration ("VA") determination, (iii) find a severe shoulder impairment, (iv) comply with Social Security Ruling 96-8p ("SSR 96-8p") in arriving at RFC, (v) follow Social Security Ruling 96-6p ("SSR 96-6p") in dealing with the opinion of a Disability Determination Services ("DDS") non-examining physician and (v) adopt the opinion of treating physician Richard C. Flaherty, M.D., that the plaintiff needed to avoid repetitive hand use. *See generally* Itemized Statement of Errors Pursuant to Local Rule 16.3 Submitted by Plaintiff ("Statement of Errors") (Docket No. 6). Most of the plaintiff's points have merit. However, inasmuch as it is apparent that the errors in question were harmless, the decision must be upheld.

## I. Discussion

### A. Step Four Finding

The plaintiff first complains that the administrative law judge erred in deeming his past work as a real-estate agent – which was found not to constitute "substantial gainful activity" – "past relevant work" for purposes of Step 4. *See id.* at 2. At oral argument, counsel for the commissioner conceded the error; however, as counsel for the plaintiff acknowledged, such error is harmless so long as the alternative Step 5 finding is supportable. For the reasons that follow, I conclude that it is.

### B. Step Five Finding

The plaintiff next attacks the administrative law judge's Step 5 finding on a number of fronts. *See* Statement of Errors at 2-7. I consider each in turn:

4

1.  <u>Credibility/Pain Analysis</u>.[3]  The administrative law judge found the plaintiff's complaints of subjective pain and resultant limitations less than fully credible as a result of two notations in his medical records. *See* Record at 19-20.  In mid-2003 the plaintiff "provided a history of helping a friend move a boat when something popped in his back several days earlier[,]" and on August 7, 2002, approximately one year after his alleged date of onset of disability, the plaintiff reported he had injured his back eight days earlier when he "felt a twinge while rolling pallets around." *Id*. at 19 (citations omitted).  The administrative law judge observed:

> It does not appear claimant's hearing testimony concerning lifting limits of no more than 8 pounds, left thumb pain, continuous shoulder discomfort, and general debilitation secondary to hepatitis was entirely candid given his willingness to undertake hoisting, loading, and maneuvering awkward objects without regard for presently asserted limitations.  Claimant does not enjoy untarnished credibility in terms of complete candor[,] and subjective complaints are received with circumspect reservation.

*Id*. at 19-20.  After further discussion of the medical evidence concerning the plaintiff's shoulder, carpal-tunnel, tendonitis and hepatitis C conditions, as well as restrictions imposed on the plaintiff by treating physician Dr. Flaherty, the administrative law judge observed:

> In sum, evidence of shoulder and manual dexterity deficits is uncontroverted as to existence.  Hepatitis-C is largely in remission and never was symptomatic according to claimant's documented statements.  Carpal tunnel discomfort was shown by neurological[] assessment as improved by 2002.  Severity of discomfort and motor deficits [were] insufficient to dissuade claimant from undertaking strenuous physical activity from time to time throughout the alleged period of disability.  Testimony purporting to establish gross physical deterioration is in profound conflict with indisputable evidence indicating residual functionality for moderately restricted work activity, and impairment severity must be accordingly discounted.

*Id*. at 20.

The plaintiff points out that there was no discussion of the boat-moving and pallet-rolling

---

[3] In separately asserting that the administrative law judge conducted a flawed pain analysis, the plaintiff relies entirely on his discussion
*(continued on next page)*

references at hearing and that the administrative law judge asked him no questions regarding them. *See* Statement of Errors at 3. As a result, he notes, he submitted an affidavit to the Appeals Council explaining that the activity in question was light and minimal and in no way inconsistent with his claimed functional limitations. *See id.*; *see also* Record at 172. He argues that the administrative law judge committed an error of law in deeming the vague, isolated and unexplored boat-moving and pallet-rolling references "indisputable evidence" of a specific work capacity and of lack of credibility. With respect to credibility, he notes that Social Security Ruling 96-7p ("SSR 96-7p") warns that seeming conflicts in a claimant's statements do not necessarily undermine credibility; adjudicators accordingly must review the case record to determine whether there is an explanation for the seeming discrepancy (such as waxing and waning symptoms). *See* Statement of Errors at 3-4. He posits that, in this case, the administrative law judge not only neglected to perform such a record review but also failed to consider or even mention the specific factors required for credibility analysis by SSR 96-7p and 20 C.F.R. § 404.1529(c). *See id.*

As the First Circuit has observed, the correctness of an administrative law judge's decision cannot be evaluated based in part on review of evidence he never saw (in this case, the later submitted affidavit). *See, e.g., Mills v. Apfel*, 244 F.3d 1, 4 (1st Cir. 2001) ("To weigh the new evidence as *if* it were before the ALJ would be, as one court fairly observed, a very peculiar enterprise, and (to us) one that distorts analysis. The ALJ can hardly be expected to evaluate or account for the evidence that he never saw.") (citation and internal quotation marks omitted) (emphasis in original). As the *Mills* court made clear, there are only two circumstances in which evidence submitted for the first time to the Appeals Council can form the predicate for a district-court remand: (i) when the evidence is new

---

of the credibility finding. *See* Statement of Errors at 4. I accordingly apply the same analysis to each.

6

and material and a claimant demonstrates good cause for its belated submission and (ii) when, regardless whether there is such good cause, the Appeals Council has given an "egregiously mistaken ground" for its action in refusing review in the face of such late-tendered evidence. *Id*. at 5-6.

At oral argument, counsel for the plaintiff contended that remand is warranted on either *Mills* ground. I am unpersuaded. The affidavit presents not "new" evidence but a clarification of old evidence – the medical records mentioning the boat-moving and pallet-rolling incidents. Nor has the plaintiff shown "good cause" for his failure earlier to submit the affidavit. He had access to the medical records in question, could have discerned that they might raise a red flag and leave a misimpression, and could have submitted his affidavit to the administrative law judge. Nor, finally, was the ground given for declination of Appeals Council review – that the affidavit did "not provide a basis for changing the Administrative Law Judge's decision" – egregiously mistaken. *See* Record at 5-6. As discussed in more detail below, the administrative law judge's ultimate RFC finding rested not only on his negative credibility determination but also on objective medical evidence of record indicating that the plaintiff was capable of a greater degree of physical activity than he had claimed at hearing.

This leaves the question whether, on the record as it existed at the time of decision, the administrative law judge erred in determining that the boat-moving and rolling-pallet references bore negatively on the plaintiff's credibility. I conclude that he did not. As an initial matter, the administrative law judge did not predicate his work-capacity determination solely, or even largely, on those references. Rather, he reviewed and summarized the medical evidence of record, including Dr. Flaherty's work restrictions, concluding that the combination of the medical evidence and the boat-moving and pallet-rolling references comprised "indisputable evidence indicating residual functionality for moderately restricted work activity[.]" *Id*. at 20.

What is more, SSR 96-7p does not require an administrative law judge to list and analyze every relevant factor *seriatim*; rather, it states: "The determination or decision must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." SSR 96-7p, reprinted in *West's Social Security Reporting Service* Rulings 1983-1991 (Supp. 2004), at 134; *see also, e.g., Frustaglia v. Secretary of Health & Human Servs.,* 829 F.2d 192, 195 (1st Cir. 1987) ("The credibility determination by the ALJ, who observed the claimant, evaluated his demeanor, and considered how that testimony fit in with the rest of the evidence, is entitled to deference, especially when supported by specific findings.").

By these lights, the administrative law judge's credibility finding can be discerned to pass muster. He made specific findings that are supported by the case record – *i.e*., that the plaintiff, while allegedly disabled, helped a friend move a boat and rolled some pallets. *See* Record at 117, 135. Based on this evidence, he drew a reasonable inference that the plaintiff had shown a "willingness to undertake hoisting, loading, and maneuvering awkward objects without regard for presently asserted limitations." *Id*. at 19. He then considered this evidence in light of the case record as a whole, concluding that the evidence in its totality established a greater capacity for work than indicated by the plaintiff's hearing testimony. *See id*. at 20.

Unfortunately, the administrative law judge did not question the plaintiff at hearing about the boat-moving and pallet-rolling incidents, which the plaintiff later explained to the Appeals Council were much more benign than appears. *See id*. at 172 (plaintiff rolled pallets because he could not lift them, with activity taking only about ten minutes; plaintiff did not physically help friend move boat but was there to observe, give advice and loan his truck). However, the plaintiff does not suggest, nor am

I aware of any authority holding, that an administrative law judge has a duty to afford a claimant at hearing an opportunity to explain seeming inconsistencies between his or her reported activities and claimed limitations before making an adverse credibility determination. In the circumstances, deference is due the administrative law judge's credibility findings.

    2.    <u>VA Vocational-Rehabilitation Determination</u>. The plaintiff next argues that the administrative law judge erred in failing even to consider the declination of VA Counseling Psychologist Mick J. Smith to provide Vocational Rehabilitation and Employment services to him on the basis of Smith's finding that "it is not reasonable to expect you to be able to train for or get a suitable job at this time." *Id*. at 199; *see also* Statement of Errors at 4-5. He observes that in *Pinkham v. Barnhart*, 94 Soc. Sec. Rep. Serv. 318 (D. Me. 2004) (rec. dec., *aff'd* Apr. 5, 2004), this court (following a majority line of caselaw) ruled that "some weight must be given to a determination of disability by the Veterans' Administration." Statement of Errors at 5 (quoting *Pinkham*, 94 Soc. Sec. Rep. Serv. at 322). Nonetheless, as the plaintiff himself recognizes, *Pinkham* addressed VA disability ratings, not VA rehabilitation-training determinations. *See id*. He does not cite, nor has my research disclosed, any decision holding that the latter type of determination is entitled to weight, or even consideration, in the context of Social Security disability proceedings.

In this vacuum, I find another of this court's cases, *Frost v. Barnhart*, No. 03-215-P-H, 2004 WL 1529286 (D. Me. May 7, 2004) (rec. dec., *aff'd* June 3, 2004), instructive. There, as here, the plaintiff relied on the VA disability-rating line of caselaw in contending that the administrative law judge erred in ignoring evidence that he had been deemed eligible for New Hampshire workers' compensation benefits. *See Frost*, 2004 WL 1529286, at *12. The court found the VA line of caselaw distinguishable, ruling that the New Hampshire decision had little to no probative value in the Social Security context in view of the fact that its criteria for eligibility differed significantly from those

employed in Social Security analysis. *See id.* at *12-*13.

In this case, the plaintiff suggests that the VA rehabilitation-services decision is relevant inasmuch as it takes into account his collective impairments, whereas his official VA disability rating of twenty percent considered only his military-service-related shoulder injury. *See* Statement of Errors at 5; *see also* Record at 125-27 (official VA disability rating). Nonetheless, the VA vocational-rehabilitation letter makes clear that the criteria for such eligibility are that a veteran be able to "[s]ucceed in a program of training or education" and "[g]et a job in an occupation that matches [the veteran's] skills, talents, and interests[.]" Record at 199. At Step 5 of an SSD determination, by contrast, the commissioner casts a much broader net, pondering whether a claimant retains the capacity to perform any work existing in significant numbers in the national economy in view of his or her RFC, age, education and work experience. *See* 20 C.F.R. § 404.1520(a)(4)(v). Thus, the VA vocational-services determination letter in question is more akin to the New Hampshire workers' compensation decision in issue in *Frost* than to the official VA disability rating in issue in *Pinkham*. In view of the lack of probative value of the VA vocational-rehabilitation determination, the administrative law judge committed no reversible error in ignoring it.

3. <u>Failure To Find Severe Shoulder Impairment</u>. The plaintiff next correctly points out that the administrative law judge erred in failing to find that he suffered from a severe shoulder impairment. *See* Statement of Errors at 5-6; Finding 3, Record at 22. The error is inexplicable. The administrative law judge himself had observed that "evidence of shoulder and manual dexterity *deficits* is uncontroverted as to existence." Record at 20 (emphasis added). As this statement suggests, one can draw only one reasonable conclusion based on the evidence of record: that the shoulder condition not only existed but also imposed more than a "minimal" impact on the plaintiff's ability to work, *see, e.g., id.* at 125-27 (VA disability rating predicated on shoulder impairment), 163,

165 (findings by DDS consultant Robert Hayes, D.O., that plaintiff was unable to perform overhead work with left arm and that "[u]pper extremity injuries are well documented"). Nonetheless, I am constrained to find the error harmless. At hearing, the administrative law judge asked vocational expert Jean Hambrick to assume the existence of the restrictions reflected in the RFC report of Dr. Hayes, *see id*. at 56., who had credited the plaintiff's shoulder impairment and found resultant limitations, *see id*. at 162-63. The administrative law judge relied for his Step 5 finding on Hambrick's testimony that a person with the Hayes RFC could perform such light jobs as usher, lobby attendant, recreation aide and counter clerk. *Compare id*. at 56-58 *with* Finding 12, *id*. at 23. Inasmuch as sequelae of the plaintiff's shoulder injury ultimately were factored into the administrative law judge Step 5 finding, his failure at Step 2 to find the injury severe was harmless.

    4.    <u>Non-Compliance with SSR 96-8p</u>. The plaintiff next attacks the administrative law judge's RFC finding, asserting that (i) the finding of "limited range of motion of the left arm" is meaningless, and (ii) the administrative law judge failed to craft his RFC on a function-by-function basis as required by SSR 96-8p, for example omitting any limitation on handling although he found in the body of his decision that "evidence of . . . manual dexterity deficits is uncontroverted as to existence." Statement of Errors at 6-7; Record at 20. The plaintiff's point, again, is well-taken. As the administrative law judge himself acknowledged in the body of his decision, Record at 20, the evidence before him uniformly indicated that the plaintiff had manual (handling) limitations, *see, e.g.*, Record at 101 (handling restrictions imposed by Dr. Flaherty), 111 (handling restrictions found by DDS consultant Lawrence P. Johnson, M.D.), 163 (handling restriction found by Dr. Hayes), yet he carelessly omitted these restrictions from his official findings, *see* Finding 6, *id*. at 23. Nonetheless, the error is again harmless for the reason discussed above: He relied, for his Step 5 finding, on vocational testimony predicated on the Hayes RFC. That RFC, in turn, incorporated handling

11

restrictions (and omitted the meaningless verbiage, "limited range of motion of the left arm"). *See id.* at 163.

5.  Non-Compliance with SSR 96-6p. In a related vein, the plaintiff next contends that the administrative law judge contravened SSR 96-6p in failing either to adopt, or explain his decision not to adopt, the handling limitations found by the DDS consultants. *See* Statement of Errors at 7. In this connection he acknowledges that the vocational expert was asked to consider these limitations but asserts, without citation to authority, that this "does not legitimize failure to consider or state them in the opinion." *Id.* at 7 n.*. While I do not condone inexplicable errors of the sort the plaintiff has highlighted, I cannot agree that such errors alone mandate reversal in circumstances in which it is clear that none was outcome-determinative.[4]

6.  Treating-Physician Treatment. The plaintiff finally complains that the administrative law judge neglected to follow relevant treating-source rules (20 C.F.R. § 404.1527, Social Security Ruling 96-2p and Social Security Ruling 96-5p) in failing to adopt Dr. Flaherty's restriction against repetitive hand use. *See id.* at 7. The plaintiff's bid for remand on this basis is again stymied by the harmless-error rule. Dr. Flaherty's restrictions included, in relevant part, "avoidance of . . . forceful or repetitive hand use[.]" Record at 101. Dr. Hayes, evidently relying on conclusions of Dr. Flaherty that he indicated were not significantly different from his own, *see id.* at 166, imposed a limitation against performing frequent handling tasks, *see id.* at 163. While the administrative law judge did not

---

[4] At oral argument counsel for the plaintiff argued, as a threshold matter, that the administrative law judge's errors with respect to his shoulder and manual impairments warranted reversal and remand without regard to whether they might be considered harmless. For this proposition he cited no authority. In any event, as counsel for the commissioner pointed out, no useful purpose would be served in remanding a case if the errors in question already were remedied on the first go-round. In the alternative, counsel for the plaintiff argued that the administrative law judge's errors in dealing with his client's shoulder impairment were not harmless inasmuch as (i) the Hayes RFC did not fully reflect the plaintiff's claimed pain-related limitations, and (ii) the vocational expert testified that if one were to credit the plaintiff's testimony, he would be unable to perform any work. *See* Record at 58-59. This argument circles back to the supportability of the administrative law judge's credibility finding, an issue that I have recommended be resolved in the commissioner's
*(continued on next page)*

adopt the Flaherty handling restriction, he relied on vocational testimony elicited in response to the Hayes RFC assessment, which did incorporate that restriction.

## II.  Conclusion

For the foregoing reasons, I recommend that the decision of the commissioner be **AFFIRMED**.

### *NOTICE*

*A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which de novo review by the district court is sought, together with a supporting memorandum, within ten (10) days after being served with a copy thereof.  A responsive memorandum shall be filed within ten (10) days after the filing of the objection.*

*Failure to file a timely objection shall constitute a waiver of the right to de novo review by the district court and to appeal the district court's order.*

Dated this 9th day of August, 2005.

/s/ David M. Cohen  
David M. Cohen  
United States Magistrate Judge

---

favor.